IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| Scott Robert Wilson, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| State of North Dakota, County of Mercer; | ) | |
| Honorable Cynthia Feland; Jessica J. | ) | |
| Binder, State's Attorney individually and | ) | |
| in their official capacities, | ) | |
| | ) | Case No. 1:14-cv-103 |
| Defendants. | ) | |

Plaintiff Scott Robert Wilson ("Wilson") is an inmate at the James River Correctional Center in Jamestown, North Dakota. He initiated this action on September 12, 2014, with the submission of an application to proceed *in forma pauperis* and proposed complaint. (Docket Nos. 1-3). He subsequently filed notice of his consent to the undersigned 's exercise of jurisdiction. (Docket No. 5). This matter is now before the court for an initial review as mandated by 28 U.S.C. §1915A. For the reasons set forth below, the undersigned orders that the above-entitled action be dismissed without prejudice.

I.  **BACKGROUND**

The events giving rise to this action were summarized as follows by the North Dakota Supreme Court in Wilson v. State:

> [¶2] Wilson was charged with four counts of issuing a check with insufficient funds or credit on July 27, 2010. Wilson requested court-appointed counsel, which the district court denied, finding he was not indigent. A trial was set for January 27, 2011, but Wilson later requested a change of plea, and the trial was rescheduled for February 15. The court instructed Wilson he could re-apply for court-appointed counsel or retain a private attorney.

1

[¶3] Before the jury trial began, Wilson told the court he had tried to retain an attorney three weeks earlier, calling "five or six of them," and had offered to pay five hundred to a thousand dollars above the retainer, but each attorney declined. Wilson provided no evidence other than his statement that he had made efforts to retain an attorney. He stated he had again applied for court-appointed counsel, but he said his application was denied because he was not indigent. This application and denial do not appear in the record before us. The court told Wilson:

> Here's the problem with the Court. We were set for a jury trial already once in this case on January 24th. . . . You were not ready to go at that point and indicated you would be doing a change of plea. Then you changed your mind, which you have every right to do, and you wanted your jury trial reinstated. So approximately three weeks later we now have that jury trial. This has been charged out since August. So you have known since August that you have been facing these charges, yet you haven't done anything about it. The fact that you waited until the last minute and couldn't get someone to handle it, unfortunately is not something the Court can look at.
> Wilson told the court he understood what a pretrial hearing is. Representing himself, Wilson questioned a potential juror about her relationship with his wife, and the court removed that juror for cause. When asked by the court whether he needed to review the jury instructions, Wilson replied, "I mean, it's pretty simple—or not simple, but black and white and to the point." The court explained to Wilson when the instructions would be read, and educated him about his choosing whether or not to testify. Wilson questioned witnesses and gave a closing statement. After the trial, he told the court he thought a pre-sentence investigation would be appropriate before his sentencing hearing.

[¶4] On February 15, 2011, a jury found Wilson guilty of all counts of issuing checks without sufficient funds. After a pre-sentence investigation, the district court sentenced him to two consecutive five-year terms of imprisonment with two years suspended and two consecutive terms of 30 days in jail with 20 days suspended and required he pay restitution. Wilson was not advised of his right to appeal at the time of sentencing. Wilson appealed to this Court, which dismissed his appeal as untimely. On May 24, 2012, representing himself, Wilson petitioned for post-conviction relief, alleging he should have been appointed counsel. Wilson again requested court-appointed counsel, which the district court granted. Through his court-appointed counsel, Wilson filed a supplement to his application, alleging the district court erred in denying him counsel at all stages of the proceeding in violation of the Sixth Amendment to the United States Constitution. He also argued that, under Peguero v. United States, 526 U.S. 23 (1999), the district court had a duty to inform him of his right to appeal and his sentence was cruel and unusual.

> [¶5] At his post-conviction hearing, Wilson testified he requested court-appointed counsel, but the court, finding he was not indigent, had denied his request. Wilson continued to represent himself and claimed to have made efforts to hire private counsel. He testified he contacted three attorneys, all of whom declined because of the limited time available before trial. He testified that he said many times he did not know what he was doing and that he never once said he waived his right to counsel. He testified that after he reviewed the transcript of his sentencing hearing, he was not informed of his right to appeal. Wilson applied for court-appointed counsel for his first appeal to this Court, and the district court denied his request.
>
> [¶6] The district court denied Wilson's application for post-conviction relief. The court found, under Peguero, the trial court's failure to inform Wilson of his right to appeal was harmless error. The court found Wilson knew he was not entitled to court-appointed counsel, because he was not indigent and he showed no evidence other than his testimony that he had tried to retain counsel. The court concluded Wilson failed to take responsibility for his situation, and his conduct at trial constituted the functional equivalent of a voluntary waiver of his right to counsel. Finally, the court found Wilson's sentence was lengthy, but not grossly disproportionate, because of Wilson's substantial criminal history.

ND 124, 833 N.W.2d 492 (affirming the state district court's dismissal of Wilson's application for post-conviction relief).

In the complaint now before the court, Wilson asserts that Judge Feland violated his rights under the sixth amendment to the extent that she denied his request for court-appointed counsel in his state criminal proceedings. Additionally, he asserts that Judge Feland and Mercer County State's Attorney Jessica Binder negligently failed to advise him of his right to directly appeal his state court conviction. In his prayer for relief, Wilson seeks, inter alia, "[a] remand and resentencing and reinstatement of [his] right to appeal" along with compensatory and punitive damages. (Docket No. 3).

## II.  STANDARDS GOVERNING INITIAL REVIEW

When a prisoner proceeding *in forma pauperis* seeks to sue a governmental entity, officer, or employee, the Prison Litigation Reform Act of 1995 ("PLRA") requires the court to conduct an

3

early screening of the complaint to weed out claims that clearly lack merit with the hope that this will help lessen the burdens imposed by the ever-rising numbers of prisoner suits, which too often are frivolous and without merit. Jones v. Bock, 549 U.S. 199, 202-03 (2007); Woodford v. Ngo, 548 U.S. 81, 83-84 (2006). In conducting the screening required by 28 U.S.C. § 1915A, the court is required to identify any cognizable claims and to dismiss the complaint, or any part of it, that is frivolous, malicious, fails to state a claim, or seeks monetary relief from an immune defendant.

Neither 42 U.S.C. § 1983 nor the PLRA imposes any heightened pleading requirements, however. Jones v. Bock, 549 U.S. at 211-12. Consequently, in order to state a cognizable claim, the complaint need only meet the minimum requirements of Fed. R. Civ. P. 8(a)(2), which are that it contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam). In addition, when a prisoner is proceeding *pro se*, the court is obligated to construe the complaint liberally and hold it to a less stringent standard than what normally would be required of attorneys. Id.; see also Federal Express Corp. v. Holowecki, 552 U.S. 389, 402 (2008).

Nevertheless, even though the pleading requirements are minimal and complaints are to be liberally construed in *pro se* cases, this does not mean that the court must accept everything or anything that is filed by *pro se* prisoners. In enacting the screening requirement, Congress obviously expected it to be more than a ritualistic exercise and that courts would only allow to go forward those claims that state a cognizable claim, that seek relief from a non-immune party, and that are not obviously frivolous or malicious.

To meet the minimal pleading requirements of Rule 8(a)(2) for stating a cognizable claim, something more is required than simply expressing a desire for relief and declaring an entitlement

4

to it. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 n.3 (2007) ("Bell Atlantic"). The complaint must state enough to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. at 93 (quoting Bell Atlantic, 550 U.S. at 555). In addition, even though the complaint is to be liberally construed, it must also contain enough to satisfy Bell Atlantic's "plausibility standard." E.g., Ventura-Vera v. Dewitt, 417 F. App'x. 591, 592, 2011 WL 2184269, at *1 (8th Cir. 2011) (unpublished per curiam) (citing Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) for the appropriate post-Bell Atlantic standard); see also Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004) (*pro se* complaints must allege sufficient facts to state a claim). Complaints that offer nothing more than labels and conclusions or a formulaic recitation of the elements are not sufficient. See id. Frivolous claims are those that are clearly baseless, fanciful, fantastic, or delusional. See Denton v. Hernandez, 504 U.S. 25, 32-34 (1992).

To state a cognizable claim under § 1983, a plaintiff must normally allege a violation of a right secured by the Constitution or the laws of the United States and that the alleged deprivation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Walker v. Reed, 104 F.3d 156, 157 (8th Cir. 1997). Even under liberal pleading standards, a *pro se* litigant, at the very least, must invoke rights under the Constitution or federal law in order to plead a § 1983 claim. Walker v. Reed, 104 F.3d at 157-58.

Finally, even though the court is obligated to construe *pro se* complaints liberally, the court is not required to ignore facts that are pled by a prisoner when they undermine the prisoner's claim. The court may accept as true all facts pled in the complaint and conclude from them that there is no claim as a matter of law. E.g., Thompson v. Illinois Dep't of Prof'l Regulation, 300 F.3d 750, 753-754 (7th Cir. 2002) (citing other cases).

## III. DISCUSSION

### A. Claim Against Mercer County

Although named as a defendant in the caption of the above-entitled action, Wilson has not explicitly asserted a claim against Mercer County in the body of his complaint.

### B. Claim Against Judge Cynthia Feland

"Judges performing judicial functions enjoy absolute immunity from § 1983 liability." Robinson v. Freeze, 15 F.3d 107, 108 (8th Cir. 1994); see also Callahan v. Rendlen, 806 F.2d 795, 796 (8th Cir. 1986) ("[J]udicial immunity protects a judicial officer from civil suits seeking money damages, including those suits initiated under 42 U.S.C. § 1983."). As the Eighth Circuit has explained, "[t]his absolute immunity from suit allows judges to fulfill their duties without concern for their own fortunes, which helps to ensure that their duties will be performed impartially and completely." See Howell v. Hofbauer, 123 F. Supp. 2d 1178, 1180 (N.D. Iowa 2000) (quoting Duffy v. Wolle, 123 F.3d 1026, 1034 (8th Cir. 1997)).

Judicial immunity is an immunity from suit, not just the ultimate assessment of damages. See Mireles v. Waco, 502 U.S. 9, 10 (1981). It cannot be overcome by allegations of bath faith or malice. Id.; see also Pierson v. Ray, 386 U.S. 547, 554 (1967) ("[I]mmunity applies even when the judge is accused of acting maliciously or corruptly"); Harlow v. Fitzgerald, 457 U.S. 800, 815-19, (1982) (opining that allegations of malice are insufficient to overcome qualified immunity); Stump v. Sparkman, 435 U.S. 349 (1978) ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority.").

There are only two circumstances under which judicial immunity may be overcome, neither of which are applicable in the case at bar. First, a judge is not immune from liability for nonjudicial

6

actions, that is, actions not taken in the judge's official capacity. See Mirales v. Waco, 502 U.S. 9, 9-12 (adding that an action is judicial in nature if "it is a function normally performed by a judge and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity."). Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. See id.; see also Stump v. Sparkman, 435 U.S. 349, 356-57 (1998) ("A judge will not be deprived of immunity because the action he took is in error, was done maliciously, or was in excess of his authority; rather he will be subject to liability only when he has acted in 'clear absence of all jurisdiction.'").

Judge Feland's actions as alleged by Wilson were clearly judicial in nature; they involved functions normally performed by a judge, occurred in a courtroom, and addressed an issue pending before the court. See Malina v. Gonzalez, 994 F.2d 1121, 1124 (5th Cir. 1993) (considering four factors when assessing whether an action was "judicial in nature"). Additionally, Judge Feland was acting within her jurisdiction when taking these actions. As a consequence, Wilson's claims against are subject to dismissal.

Wilson's efforts to sidestep the doctrine of judicial immunity by asserting claims against Judge Feland in her individual capacity are unavailing. See O'Connor v. Young, No. 3:06CV331, 2006 WL 1720700 at *1 (E.D. Va. June 22, 2006). As Judge Feland was acting in her judicial capacity, her immunity from suit is absolute. See id.; see also Myers v. Cholakis, No. 8:08-cv-126, 2008 WL 5147042 at *1 (N.D.N.Y. Dec. 5, 2008).

### C. Claims Against Mercer County State's Attorney Jessica J. Binder

Having reviewed Wilson's complaint, the undersigned concludes that it is devoid of any cognizable claim against Jessica J. Binder. The basis for his claim against Binder is that she

7

negligently failed to advise him of his appellate rights under N.D.R. Crim. P. 32.[1] Claims of negligence are not generally cognizable under the guise of a § 1983 action. See Burnett v. St. Charles County Jail, No. 4:13–CV–1990, 2014 WL 1116751, at *3 (E.D. Mo. March 20, 2014) (citing Daniels v. Williams, 474 U.S. 327, 328 (1986), and Estelle v. Gamble, 429 U.S. 97, 106 (1976), for the proposition that "[m]ere negligence does not rise to the level of a constitutional violation."). Moreover, although it would seem prudent for a prosecutor to broach the subject of a defendant's appellate rights at the time of sentencing (if for no other reason than to avoid an issue on appeal), the state rules of criminal procedure do not require that she do so.

### D. Request for Remand and Re-Sentencing

To the extent that Wilson's complaint seeks relief in the form of release from the terms of his sentence and remand of his state criminal case to state district court, it too is subject to dismissal. Section 1983 cannot be utilized to challenge the fact or duration of confinement. See Preiser v. Rodriguez, 411 U.S. 475, 489–90, 93 (1973) (habeas corpus is exclusive remedy for state prisoner who challenges fact or duration of his confinement and seeks immediate or speedier release).

---

[1] N.D. R. Crim. P. 32 provides in relevant part the following:

Notification of Right to Appeal. After imposing sentence in a case that has gone to trial, the *court* must advise the defendant of the defendant's right to appeal and of the right of a person who is unable to pay the costs of an appeal to apply for appointment of counsel for purposes of appeal. The *court* is under no duty to advise the defendant of any right of appeal when sentence is imposed following a plea of guilty

N.D. R. Crim. P. 32(a)(3) (emphasis added).

**IV.	CONCLUSION**

The above-entitled action is **DISMISSED** without prejudice.

Dated this 26th day of September, 2014.

*/s/  Charles S.  Miller, Jr.*
Charles S.  Miller, Jr., Magistrate Judge
United States District Court
